# EXHIBIT 7

RANDALL BERNARD ALLEN,
in Propria Persona.
281 E.Colorado Blvd#2175
Pasadena, California 91102
(909)442-9472
randallallen190@gmail.com

FiRSt AMENDED COVER SHEET

**FILED**
Superior Court of California
County of Los Angeles

AUG 2 1 2020

Sherri R. Carter, Executive Officer/Clerk of Court
By _____ Deputy
Cristina Grijalva

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

2OSTCV30739

RANDALL BERNARD ALLEN
Plaintiff,

vs.

Defendants,
County of Los Angeles, for
The City of Los Angeles;
MICHEL MOORE,LAPD;
ALEX VILLANUEVA,LASD;
ERIC GARCETTI,L.A.Mayor;
GALVIN NEWSOM,CA Governor;
Unknown 'DOES 1-10 Inclusive'.

FiRSt AMENDED

THE TORT OF OUTRAGE(IIED)
CIVIL RIGHTS COMPLAINT for DAMAGES and
INJUNCTIVE RELIEF:
(1)DEPRIVATION OF CIVIL RIGHTS,42 U.S.C..§1983-
RIGHT TO PRIVACY, 18 U.S.C.,SECTION 241-242;
(2)DEPRIVATION OF CIVIL RIGHTS,
42 U.S.C.§1983- ILLEGAL EXPERIMENTATION-
H.R.2977 SPACE PRESERVATION ACT OF 2001;
(3)DEPRIVATION OF CIVIL RIGHTS, U.S.C.
§1983- RACKETEERING.
(4) DEFAMATION(SLANDER,LIBEL).

DEMAND FOR JURY TRIAL

08/24/2020

**Exhibit 7 - Page 49**

## JURISDICTION AND VENUE

(1. This action is brought by Plaintiff RANDALL B. ALLEN("Plaintiff") pursuant to 42 U.S.C.§1983.

(2. This court has jurisdiction under 28 U.S.C.§1343(4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.S.C.§1983, and under 28 U.S.C.§1331.

(3. The acts and omissions complained of were medically discovered on June 7, 2019 but violations commenced prior to discovery and continue(s). Discovery not  limited, violations commenced superseded within the Central District of California. Therefore, venue lies in this District pursuant to 28 U.S.C.§1391.

(4. Plaintiff filed a claim in accordance with California Government Code §§910et seq., with the City of Los Angeles on January 2, 2020. Plaintiff's Claim was rejected on February 18, 2020, and this action is timely filed.

**Exhibit 7 - Page 50**

PARTIES

(5. Plaintiff RANDALL B. ALLEN is a resident of the State of California and resided within the jurisdiction of the State of California at the times herein alleged. After settling a civil suit with The City of Los Angeles and relocating to the State of Tennessee, Plaintiff did return to the State of California. He is 50 years old.

(6. At all times relevant herein, Defendant Michel R. Moore was employed by and working on behalf of the Los Angeles Police Department as Chief of the Los Angeles Police Department. He does reside within the jurisdiction of the State of California. In his capacity as the Chief of the Los Angeles Police Department he is responsible for the Department's actions, training(s), and programs. Defendant Michel R. Moore is sued in his individual and official capacity.

(7. At all times relevant herein, Defendant Alex Villanueva was employed by and working on behalf of the Los Angeles Sheriff's Department and resides within the jurisdiction of the State of California. In his capacity as the Los Angeles Sheriff, he is responsible for the Departments actions, training(s), and programs. Defendant Villanueva is sued in his individual and official capacity.

(8. At all times relevant herein, Defendant Eric Garcetti was employed by and working on behalf of the Office of Los Angeles Mayor. He resides within the jurisdiction of the State of California. In his capacity as Los Angeles City Mayor, he is the official head and chief executive officer of Los Angeles California, United States. He is the head officer of all counties and cities under the jurisdiction in accordance with the Constitution of California. Defendant Garcetti is sued in his individual and official capacity.

(9. At all times relevant herein, Defendant Gavin Newsom was employed by and working on behalf of the State of California Governor, and resides within the jurisdiction of the State of California. In his capacity as California Governor, he is the chief executive of

**Exhibit 7 - Page 51**

government in California. Defendant Newsom is sued in his individual and official capacity.

(10. Plaintiff is informed and believes, thereon alleges that several individuals 'unknown' but described as "DOES 1-10" participated in their individual and official capacity. A continuous manner and practices did violate the Plaintiff's civil rights. In re RANDALL BERNARD ALLEN v. DETECTIVE THOMAS SMALL; DETECTIVE LUIS CARRANZA; AND DOES 1-10 INCLUSIVE( case #2:16-cv-00396), filed on 1/19/16, DOES 1-10 were police officers, deputy district attorneys, or district attorney investigators. They were at all relevant times acting in the course and scope of their employment and agency. DOES were in some manner responsible for the acts of omission. Plaintiff did petition the courts to amend the Complaint to allege such names and responsibilities when that information was ascertained. That information was never divulged. Plaintiff was informed and believes and thereon alleges that the aforementioned were informed of violations and continued to commit a continuous pattern of misconduct and deliberate indifference.

## GENERAL ALLEGATIONS

(11. Plaintiff is informed and believes, and thereon alleges, that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-Defendants.

(12. Each paragraph of this complaint is expressly incorporated into each cause of action which is a part of this Complaint.

(13. The acts and omissions of all Defendants were engaged in maliciously, callously, oppressively, wantanly, recklessly, and with deliberate indifference to the rights of Plaintiff.

**Exhibit 7 - Page 52**

## FACTUAL ALLEGATIONS

(14. The Plaintiff Randall Bernard Allen was arrested in 2014 for a burglary and homicide cold case that occurred in 2003 (11 yrs old).

(15. As part of their investigation LAPD Detective Thomas Small serial number 24086, and LAPD Detective Luis Carranza serial number 32525, interviewed Plaintiff as a suspect. The interview was recorded and the Plaintiff had no viable facts that would substantiate probable cause to be implicated but was arrested and charged for said allegations. Since the Plaintiff is a single father and had full custody of his 11-year-old son Davon Randy Allen when the arrest occurred child was made a ward of the court and placed in foster care.

(16. Plaintiff spent 13 months in the Los Angeles County Men's Central jail and was acquitted on all charges in jury trial on June 17, 2015. Plaintiff did regain full custody of his son, some 2 years later, on March 16, 2017. He spent a total of 3 years in foster care.

(17. For filing purposes, Detective Thomas Small did misrepresent Plaintiff's statements to the District Attorney's Office, stating that Plaintiff was "adamant" about statements made. Coupled with his partial palm print inside the home, Detectives established probable cause for arrest. There were 24 different person's fingerprints inside the victim's apartment, which was ramsacked.

(18. Plaintiff did suffer extreme physical and emotional distress awaiting jury trial. Plaintiff suffers from Crohn's Disease, that requires a strict diet, did not know where his son was since none of his family members would get the child out of foster care, and if found guilty on the false charges, would likely serve a life sentence in custody.

**Exhibit 7 - Page 53**

(19. During civil litigation for malicious prosecution, false evidence and failure to disclose exculpatory evidence, additional Defendants were included in the complaint listed as "DOES 1-10 INCLUSIVE".

(20. Plaintiff is informed and believes and thereon alleges that Defendants sued as "DOES 1-10 INCLUSIVE" were police officers, deputy district attorneys, or district attorney's investigators, as stated in the claim. At all relevant times they were acting in the scope of their employment and agency. Each Defendant was the agent of the other.

(21. Plaintiff alleges that each of the Defendants named as "DOES" was in some manner responsible for the acts and omissions alleged, and Plaintiff did ask leave of the United States District Court Central Division, to amend the complaint to alleged such names and responsibility when that information was ascertained.

(22. Such information was ascertained and discussed by attorney Ronald Kaye, KMBL Law and Magistrate Gail Standish and Magistrate Beverly Reid O'Connell(RIP). This information was not provided to the Plaintiff.

(23. It was also discovered  and contained in confidential police records that Plaintiff Randall Allen was experimented on without his "Informed Consent" with a medical device. This device is implanted, wireless and uses his unique resonance frequency(the brains fingerprint), obtained by an EEG scan. It was then calibrated into a cray computer and system that can transmit using low frequency or radio frequency, directly to the device. These methods and systems are commonly used in Electronic Warfare by the U.S.Military.

08/24/2020

**Exhibit 7 - Page 54**

(24.There are many system components and systems can be coupled with others like Remote Neural Monitoring and/or satellite systems.

(25. Elon Musk is releasing a Brain-To-Computer(BCI) system in 2021 called "NeuraLink". Elon Musk and 8 different companies, one being Emotiv that had a demonstration in Northern California when the Plaintiff was in Soledad(Correctional Training Facility) in Northern California. There is another company, NeuroVigil that is testing a similar system and device called "iBrain" which is for use in government institutions for research purposes only. These systems are made to connect human beings and their brains, directly to computers. This being inconsistent with what the military is funded to research, weaponry, not medical devices.

(26. Informed consent is a requirement with all biomedical research, studies, and experimentation on human subjects as stated one of the three principles in The Belmont Report. The capabilities of these devices, being in the electromagnetic spectrum with wireless connectivity and satellite compatibility, qualifies these systems and devices under "H.R.2977, The Space Preservation Act of 2001".

(27. In the second mediation (3/16/17), ordered because the Detectives did not show up for the first, Magistrate Standish made comments in front of the Plaintiff, his son Davon R. Allen, Ronald Kaye Esq., and his understudy Kevin LaHue stating that "they thought that you were a thug, and you know how these government programs are, plus everyone has a crazy ex-girlfriend."

(28. These statements were made in regards to Adriana M. Tesic and Jacqueline J. Zavala, that divulged this information contained within confidential police files. Someone

**Exhibit 7 - Page 55**

associated with the Plaintiff was contacted by a correctional officer from Soledad CTF, a Mr. Castro, that also contacted Rasheda R. Henry ex-girlfriend of the Plaintiff's at the time when at Soledad CTF.

(29. The initial confrontation with correctional officers began with Robinson from Delano Reception Center(NKSP), that was interviewed by Internal Affairs. After that incident officers began harassing and telling lies to inmates to try and get the Plaintiff attacked by spreading a homosexual rumor.

(30. When attorney Ronald Kaye contacted CDCR for the Plaintiff's G.E.D. certificate, the scores had been changed in the system to show that the test was incomplete. He had to call Sacramento to get the original scores from the archives that showed a completed test, a completion certificate, and a picture of the Plaintiff with others that completed the test, in cap and gown for the certificate ceremony. There is also a complaint (602) in the CDCR Appeals Coordinators archives for the Plaintiff's funds($400.00), credited back to his account that Rasheda Henry sent to Delano Reception Center that was not transferred from Soledad(CTF) to California Correctional Institution, Tehachapi. An officer went into the computer system and deleted the funds from the account. The letter, envelope stamped with the amount on the front, and the deposit receipt was provided as proof for the appeal. Information was entered into the police computer system to create problems for the Plaintiff that has followed him for years, without his knowledge.

(31. An online business was created with the capabilities of this technology, while simultaneously used to torment the Plaintiff, which is why ex-girlfriends were used and the Plaintiff was being slandered with claims of homosexuality. This information was also brought to the attention of Deputy District Attorney Tina Hooks during one of the Plaintiff's

**Exhibit 7 - Page 56**

08/24/2020

criminal court proceedings in November 2015. Someone came into the courtroom and showed her a video on their cell phone, one in which the Plaintiff has never made or gave consent to have made. This was a deep fake video.

(32. Plaintiff was enrolled in a surveillance program for monitoring, LAPD Operation Laser Program amongst other government programs, for retaliation purposes but also to ensure that he would not be successful with getting agencies to investigate this matter. All his electronic devices were illegally intruded upon and he has filed police reports and disputes with several cell phone carriers. During civil litigation, electronic devices were intruded upon, including conversations with legal representation. When the Plaintiff did discuss this with Ronald Kaye, he stated," the detectives are trying to see if you are involved in criminal activity to get your case dismissed." This did continue when the settlement was reached and the Plaintiff and his minor son relocated to the State of Tennessee. Everyone that the Plaintiff did contact, was also contacted by law enforcement agents, including law enforcement officers in the State of Tennessee. Every school that the Plaintiff's child attended, and every therapist that was providing therapy to Davon R. Allen for being traumatized, was contacted and the Plaintiff was slandered. Every area that the Plaintiff did relocate to, in an attempt to evade harassment and slander, neighbors were contacted and told that the Plaintiff is a gang member, a homosexual, a child molester, and a racist.

(33. There were many complaints filed in the State of Tennessee, one in regards to AT&T being contacted by a Los Angeles law enforcement agent and provided the Plaintiff's phone information but did not have a warrant. Plaintiff has been in arbitration twice with AT&T and currently with Verizon as he discovered that there are several peers

**Exhibit 7 - Page 57**

connecting to his phone network, by way of his personal ASN(cellphone connection). This was done before by Jacqueline J, Zavala, and Adriana M.Tesic when they included phone information into a network and provided the information to the public to use up the Plaintiff's data. People would get into the vicinity of the Plaintiff and access the wifi and data of his private cell phone, which caused his Verizon phone bill to have a balance of over $800.00. In the apartment that he had in Los Angeles, his personal information was provided to all the tenants living in the apartment building and they were all advised to get a landline phone in his name in their apartments. All the names and phone numbers showed up on the Plaintiff's credit report as unpaid debts.

(34. Darlene A.Kemp administering the Plaintiff's special needs trust account was not paying the AT&T bundle service and cell phone bill which caused a huge debt also. There was a distribution request form sent in by the Plaintiff each month to have the bills paid, but they went unpaid until services were suspended, on more than one occasion. The account information and bill summary is required with each distribution request form submitted for a bill to be paid. The phone ended up once again being included in a network that allowed others to use Plaintiff's wifi and data usage. These individuals would only know each other from illegally intruding on the Plaintiff's private cell phone since everyone that the Plaintiff contacts, is called and he is slandered to create a bias for the purpose of harassment, and orchestrated financial ruin.

(35. He was forced to put a freeze on his credit because of identity theft. Plaintiff was unaware of the broad capabilities of the STINGRAY DEVICES from the Federal Bureau of Investigations that most local law enforcement agencies have now been afforded. These devices impersonate cell

**Exhibit 7 - Page 58**

phone tower network connections and capture the phone's data, call logs, text messages, and conversations. LAPD did put out a statement in regards to cell phone intrusion to curve criminal activity but expressed that a warrant absolutely must be obtained. The StingRay device has been used by law enforcement agencies to avoid going through the process of obtaining a warrant. The Plaintiff could not have been eligible for the Operation Laser Program because he did not reside in Los Angeles county Hot Spots or California for that matter. The program was dismantled.

(36. Prior to the false arrest, while Plaintiff was living at 2750 ½ Alsace Avenue taking care of his mother that was confined to a wheelchair and suffering from Stomach/Intestinal Cancer, Davon Allen was attending Cienega Elementary School. He was called into the office with LAPD officers present and the principal asked the minor if father was touching him inappropriately. Minor said no, my dad takes good care of me. Plaintiff was called up to the school and told that they received a call about negligence in the home and inappropriate behavior towards the minor. Plaintiff explained that the school has a copy of the court restraining order against his ex-girlfriend Adriana M. Tesic, on file. Also that she was being directed by Jacqueline J. Zavala and his sister Robin R. Cole that was provided fraudulent information but was aware of what was being done to the Plaintiff. He explained that these individuals have some sort of ties with law enforcement agents and that Mrs. Tesic admitted to the Plaintiff, that she was being forced to do everything that she is doing to the Plaintiff.

(37. Plaintiff was told anonymously that his family received a federal grant under false/fraudulent pretenses for the illegal experimentation and kept all the proceeds without telling him. Plaintiff was/is being monitored and every electronic device illegally intruded upon, including this laptop, for the

**Exhibit 7 - Page 59**

08/24/2020

purpose of Obstruction of Justice and to deter legal
representation. A smear campaign was orchestrated to
discredit the Plaintiff since he began filing more formal
complaints.

08/24/2020

Exhibit 7 - Page 60

PARTICIPATION, STATE OF MIND AND DAMAGES

(38. Each of the Defendants named acted without authorization of law and went beyond all bounds of decency.

(39. Each Defendant participated in the violations alleged herein, was part of directing the violations alleged herein, or knew that said violations alleged herein occurred and failed to act to prevent or put an end to such violations. By doing so, allowed a continuous course of conduct.

(40. Each Defendant ratified, approved, or acquiesced in the violations alleged herein. As joint actors with joint obligations, each Defendant was and is responsible for the failures and omissions of the other.

(41. Each Defendant acted individually and in concert with the other Defendants and others not named in violating Plaintiff's rights.

(42. Each Defendant acted with deliberate indifference to or, reckless disregard for, an accused's rights to be free from privacy rights violations of reasonable expectation and human biomedical and behavioral research, study(s), and experimentation without informed consent.

(43. As a direct and proximate result of the aforementioned acts, omissions, and decisions of the Defendants, Plaintiff has suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, apprehension, loss of earnings and loss of financial stability which has caused Plaintiff to sustain damages in a sum to be determined at trial.

(44. The aforementioned acts of the Defendants, and each of them, was willful, wanton, malicious, oppressive, in bad faith and done with reckless disregard or with deliberate indifference to the constitutional

**Exhibit 7 - Page 61**

rights of the Plaintiff, entitling Plaintiff to exemplary and punitive damages from the Defendants in an amount to be proven at the trial of this matter, but also injunctive relief.

(45. As a direct and proximate result of the above-described acts and omissions of Defendants, but not limited to the Los Angeles Police Department's Operation Laser Program, Plaintiff was forced into self-representation "propria persona," to institute and prosecute the within action so that he might vindicate the loss and impairment of his rights. Intrusion on all personal registered electronic devices due to covert surveillance and monitoring for the purpose of predictive policing tactics used out of context and defamation to obstruct justice, the Plaintiff has been unable to retain legal representation. The smear campaign was/is an attempt to discredit the Plaintiff.

(46.  Plaintiff requests payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. § 1988. Plaintiff suffers from Crohn's Disease, severe nerve damage, and is raising his minor child by himself, but had to dedicate himself to the vindication and protection of his civil rights as well as the integrity of his human rights.

FIRST CLAIM FOR RELIEF

DEPRIVATION OF CIVIL RIGHTS- 42 U.S.C.§ 1983- THE RIGHT TO PRIVACY VIOLATIONS(Against all named Defendants). TITLE 18 U.S.C., Section 241- Conspiracy Against Rights and 18 U.S.C., Section 242-Deprivation of Rights Under Color of Law.

(47. Plaintiff realleges all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint as if fully set forth herein.

(48. Defendants while acting under the color of law, as agents, civilian agents, City and County of Los Angeles employees, and The State of California administration or officials, deprived Plaintiff of his civil rights by violating his rights under the Fourth Amendment to be free from unreasonable search and seizures. Someone should have

**Exhibit 7 - Page 62**

concluded that the Plaintiff's constitutional rights should have been invoked. There was no probable cause to believe that the Plaintiff was involved in any criminal activity because he was under surveillance and monitoring. It was known for a fact that he was not involved in any criminal activity, or a warrant would have been issued for arrest.

(49. Plaintiff was entered into a chronic offender law enforcement program, being labeled as therefore considered an active gang member. Plaintiff has been arrested and has never been charged with any gang allegations or enhancements, has no gang-affiliated tattoos, or has never divulged to anyone that he is an active or non-active gang member because he is not and never has been. Each defendant co-conspired with one another to discriminate, showing a bias, even though the Plaintiff had not been in any trouble for years, and the time frame when he was convicted of any violations, was space out over several years.

(50. As a direct and approximate result of the aforesaid acts, illegal surveillance, intrusion on every electronic device, the Plaintiff was slandered to every business, school, attorney, etc., in an attempt to obstruct justice and to deter responsibility for illegal experimentation. These acts were carried out with malicious intent and have caused the Plaintiff great hardship. The Plaintiff has suffered while living with a  chronic ailment that comes out of remission due to worry and stressful situations. He has suffered great mental, emotional and physical pain, anguish, fright, nervousness, shock, humiliation, indignity, embarrassment, harm to reputation, apprehension, loss of earnings and loss of financial stability, which has caused the Plaintiff to sustain damages in a sum to be determined at trial.

SECOND CLAIM FOR RELIEF
DEPRIVATION OF CIVIL RIGHTS--42U.S.C.§1983
ILLEGAL EXPERIMENTATION; H.R.2977 SPACE
PRESERVATION ACT of 2001

**Exhibit 7 - Page 63**

(51. The Plaintiff realleges all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint as if fully set forth herein.

(52. All Defendants alleged, while acting under the color of law, deprived Plaintiff of his civil rights, more particularly, under The Fourth Amendment to be free and secure in his persons, houses, papers, and effects against unreasonable searches and seizures. Human rights that are inherent to all human beings were violated, including the right to liberty, freedom from slavery, and torture. The Belmont Report created by the National Commission for the Protection of Human Subjects of Biomedical and Behavioral Research, states unequivocally, Informed Consent is must from the ethical principle, basic human rights principle, as well a legal standpoint.  Informed consent is the process in which a patient learns about and understands the purpose, benefit, and potential immediate and/or future risk of any medical procedure, research trials or studies, and then 'Agrees' to receive the treatment or participate. The patient has the freedom and right, to decide what should or should not happen to his body, as well as to gather information before undergoing any medical procedure. No one, including physicians, have the right to force a patient to act in a particular way, forcibly touch, enroll or treat another person without permission, which constitutes battery and or physical assault.

(53. Plaintiff Randall Allen was never afforded the opportunity to give expressed, or informed consent. He was never educated on the particular health risk involved, especially since he has a chronic ailment. There was never a licensed medical physician that provided any information pertaining to a medical procedure that warranted medical device implantation of any kind to sustain life or for any other reason. The three basic ethical principles to The Belmont Report: a. Respect for Persons, individuals should be treated as autonomous agents, a person capable of deliberation about personal goals and of acting under the direction of such deliberation. b.Beneficence, persons are treated in an ethical manner not only by respecting their

**Exhibit 7 - Page 64**

decision and protecting them from harm but also making effort to secure their well-being (1)Do not harm and (2)  maximize possible benefits and minimize possible harm. c.Justice, who should receive the benefits of research and bear its burdens. This is the sense of "fairness in distribution" or to which is entitled or denied without good reason or imposed unduly.

(54. Defendants acting under the color of law, and administrations were informed on several occasions about these violations, and acted with deliberate indifference, even though documentation is contained in confidential police and medical records, and a previous civil attorney discussed this issue with a Federal Judge.

(55. Informed consent was never acquired, but law enforcement agents divulged this information contained in confidential police files to civilians, and those civilians posted this information on social media causing a devastating effect on not only the Plaintiff's life but his minor child that he is raising by himself. Slander increased after the Plaintiff returned to California, and spoke on two separate occasions at The Police Commissioner Board meetings on January 14, 2020(receiving a business card from Mr. Arevalo Office of Inspector General and from Sergeant Leonid A.Tsap, LAPD to rectify Plaintiff's issues). Both were called on more than one occasion for relief from being stalked and electronic devices being used to inflict harm. The second appearance on January 21, 2020, held at 100 W. First Street in Downtown Los Angeles. On March 3, 2020, the Plaintiff addressed being followed and harassed since speaking at previous meetings, and his cellphone being illegally intruded upon with the intent of intimidation and discrediting him to potential legal representatives.

(56. The Plaintiff has purchased several cell phones from several different carriers and every phone has been intruded upon with officers, or civilian agents contacting attorneys, as well as apartment managers and the Plaintiff has been slandered with being an active gang member and involved in criminal activity. Agents and acting

**Exhibit 7 - Page 65**

civilian agents knowingly providing misinformation and or otherwise bad faith conduct, that was instrumental in causing undue hardship and denial of liberty. The hardships are then being displayed on the internet or to every individual that the Plaintiff is associated with. A play-by-play of the malicious behavior as a direct result of the technology illegal used on the Plaintiff, this for unfair business practices. The Plaintiff's cellphone number(s) and original ASN number, has been peered as if belonging to a private entities network and included with several large corporations. This highly illegal and unethical for a private individual line. Data is being provided by the illegal intrusion and these corporations have established an unknown interest in the Plaintiff as if a corporation himself without his authorization.

(57. The U.S. Department of Health and Human Services(HHS), Office for Human Research Protections(OHRP), 45 CFR part 46, subpart A. Most research involving prisoners and some children, is prohibited. Research involving "Benign Behavioral Intervention(BBI), a category of IRB review and research interactions with adult participants are deemed "harmless," collection of information from adults must be with their approval or agreement. To be exempt, no Non-Exempt activities can be involved. Research that includes both exempt and non-exempt activities is not exempt.

Exemption3- 45CFR 46.104(d)(3):
(i) Research involving benign behavioral interventions in conjunction with the collection of information from an adult subject through verbal or written response(including data entry) or audiovisual recording if the subject prospectively agrees to the intervention and information collection and at least one of the following criteria are met:
(A)The information obtained is recorded by the investigator in such a manner that the identity of the human subjects cannot readily be ascertained, directly or through identifiers linked to the subjects;
(B)Any disclosure of the human subjects' response outside the research would not reasonably place the subjects at risk of criminal or

**Exhibit 7 - Page 66**

civil liability or be damaging to the subjects' financial standing, employability, educational advancement, or reputation: or

(C)The information obtained is recorded by the investigator in such a manner that the identity of the human subjects can readily be ascertained, directly or through identifiers linked to the subjects, and an IRB conducts a limited IRB review to make the determination required by §_.111(a)(7).

(ii) For the purpose of this provision, benign behavioral interventions are brief in duration, harmless, painless, not physically invasive, not likely to have a significant adverse lasting impact on the subjects, and the investigator has no reason to think the subjects will find the interventions offensive or embarrassing. Provided all such criteria are met, examples of such benign interventions would include having the subjects play an online game, having them solve puzzles under various noise conditions, or having them decide how to allocate a nominal amount of received cash between themselves and someone else.

(iii) If the research involves "deceiving" the subjects regarding the nature or purpose of the research, this exemption 'is not applicable unless the subject authorizes' the deception through a prospective agreement to participate in research in circumstances in which the subject is Informed that he or she will be unaware of or misled regarding the nature or purposes of the research.

Exemption #3 is intended for research studies that involve "benign behavioral interventions"(to which participants must prospectively Agree) combined with the collection of information from adult subjects through verbal or written responses including data entry, or through audiovisual recording.

A behavioral intervention involves the performance of a cognitive, intellectual, educational, or behavioral task; or the manipulation of the subject's physical, sensory, social, or emotional environment. Because medical interventions are not behavioral interventions, studies that include medical tests, medical procedures, and/or the use of Medical Devices are Not Eligible for Exemption under category #3.

**Exhibit 7 - Page 67**

(58. The above acts and omissions, while carried out under the color of law, have no justification or excuse in law and instead constitute a gross abuse of power and government authority. In the pursuit of protecting the people and preserving civil order, these violations were fundamentally unfair, arbitrary, oppressive, and activity that is unrelated to governmental functionality. The Plaintiff has a liberty interest in being free from abusive governmental actions and in being accorded procedural and substantive due process of law. These rights and privileges are secured by Plaintiff by the provisions of the Fourth Amendment and Due Process Clause of the Fourth Amendment to the United States Constitution and by 42U.S.§ 1983. All these interests were implicated by the Defendants, which proximately caused the injuries and damages to Plaintiff, as herein alleged.

(59. Over a period of several years, innovative general and medical technology have advanced tremendously. There has been many U.S. patents approved in direct association with radio frequency, micro and nanochips, neural, auditory, optical, as well as the brain and the functionality of. Here are just a few patented devices:
a).1998-2000(US6011991A), Communication System & Method Including Brain Wave Analysis and/or Use of Brain Activity(Remote Viewing).
b).1991-1994(US5356368), Method of and Apparatus for the Inducing Desired States of Consciousness (EEG/FFR Waveforms by Broadcast).
c).1974-1976(US3951134), Apparatus & Method for Remotely Monitoring and Altering Brain Waves (Radio Frequency/Electromagnetic Waves).
d).1986-1988(US4717343), Method od Changing a Person's Behavior (Subconscious Brainwash).
e).1990-1992(US6470214), Method & Device for Implementing Radio Frequency Hearing Effect (Microwave Hearing, to Brain).

**Exhibit 7 - Page 68**

f).1971-1973(US3712292), Method of & Apparatus for Producing Swept Frequency Modulated Audio Signal Patterns for Inducing Sleep (Brain Frequencies Broadcast).

g).1989-1992(US5159703), Silent Subliminal Presentation System aka Silent Sound-Microwave.

h).1999-2001(US2012045659A1) System & Method for Stimulation of Neuronal Activity.

Over the past few decades, there have been great technological advancements in these fields, as well as improvements to these devices. We are in the year 2020, there is no need to talk about the future, we are there and living it.

## THIRD CLAIM FOR RELIEF
### DEPRIVATION OF CIVIL RIGHTS- 42 U.S.C. § 1983- RACKETEERING(Against all Defendants)

1994 U.S.Code Title 18- Crimes & Criminal Procedure Part I- Crimes Chapter 96- Racketeering Influenced & Corrupt Organizations, Section § 1962.

(60. Plaintiff realleges all the foregoing paragraphs, as well as any subsequent paragraphs contained in the complaint as if fully set forth herein.

(61. All Defendants, while acting under the color of law, deprived Plaintiff of his civil rights by violating his right to liberty, to be free from cruel and unusual punishment, and his human rights to be free from trafficking (the process of trapping and exploiting a person, through violence, deception, or coercion, for financial or personal gain). Fraud was committed and a Federal grant was received, but also the defrauding of the public for profits.

## FOURTH CLAIM FOR RELIEF
### DEPRIVATION OF CIVIL RIGHTS- 42 U.S.C. § 1983- DEFAMATION(SLANDER and LIBEL), CALIFORNIA CIVIL SECTION §44; 45-46.

**Exhibit 7 - Page 69**

(62. The Plaintiff was defamed verbally and through social media with the intention of inflicting emotional distress. His reputation of being a long reformed, good single parent, that maintains his household and affairs adaquetely has been ruined. This was to prevent prospering economically, and to destroy relationships with individuals held for many years. Isolation was intended to cause despair leading to self termination. Defamation has destroyed Plaintiff's home-based small business, but also caused the Plaintiff's special needs trust administrator to disregard fiduciary responsibilities. Crohn's Disease requires a strict diet and Plaintiff has been unable to secure an apartment to prepair meals and obtain required rest which has caused stress levels to be extreme and disease to come out of remission. Plaintiff has lost excessive weight, and minor child suffers from depression and anxiety. This has been an outrageous pattern of conduct that has never stopped. Plaintiff in mediation did make statements to Magistrate Standish, that these individuals will be more highly motivated to continue crimes against himself and his child after the settlement. Plaintiff was advised by Ronald Kaye to relocate out of California. Innovative technology has afforded the capabilities to be GPS tracked worldwide.

**Exhibit 7 - Page 70**

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Randall Bernard Allen, request relief
on his own behalf as follows, and according to proof, against
each Defendant:

1. Mandatory Injunction, as it stands to all medical,
   biomedical, and behavioral but not limited to,
   experimentation, any/all foreign implants, research,
   studies, and test; also watchlist or any law
   enforcement surveillance programs.

2. General and compensatory damages in an amount
   according to proof;

3. Special damages in an amount according to proof;

4. Exemplary and punitive damages against each
   Defendant, in an amount according to proof;

5. A declaration that the acts and/or omissions of each
   Defendant violated Plaintiff's rights under the United
   States Constitution;

6. Cost of suit, including attorney's fees, under 42
   U.S.C.§ 1988 and whatever other provisions of law
   may be applicable; and,

7. Such other relief as may be warranted or as is just and
   proper.

Respectfully submitted,
Randall Bernard Allen,
In Propria Persona.

DATED: August    , 2020

JURY DEMAND
Trial by jury of all issues is demanded.

**Exhibit 7 - Page 71**